Will the attorneys who are going to argue the case please approach the podium, identify yourselves and the party you represent, and indicate to the court how much time you'd like for your argument. Good afternoon, Your Honor. James Stevens on behalf of the appellants RER Financial and Rogers. We would anticipate if we may have the 20 minutes for argument, 10 minutes for rebuttal. 15-5. Very well. Thank you, Judge. Good morning, Your Honor. Jennifer Kimball, K-I-M-B-A-L-L, on behalf of Oak Forest Properties LLC, the appellee. With regard to time, we would ask just for 15 minutes to respond. Very well. Now, remember, the microphone is for recording purposes only. It's not for amplification. So if you want to be heard by these two witnesses out there and the court, you're going to have to keep your voice up. Okay? Thank you.  Shall I? Good afternoon, Your Honor. Good afternoon, Justices, and may it please the court. James Stevens on behalf of the appellants. This is a case, it's an appeal out of the 6th District. It's a case about a successful litigant being denied their attorney's fees and costs in a landlord-tenant dispute when the lease provides for it. There was a commercial space in Oak Forest for which there was a lease between the parties. They came to a point of disagreement. After a long and drawn-out dispute, ultimately, the tenant terminated the lease. Despite this termination, the landlord sued to attempt to claim for back rent and future rent, and the tenant defended. The tenant also levied its counterclaim to recover its security deposit. Procedurally, there were alternative claims. Yeah, that's where you lose me. Alternative, yes, there was an alternative claim, but there was also in that first count this claim for damages for the delay that was far bigger than the security deposit. That didn't seem to be in the alternative. It seemed to be you breached, we breached. You say we breached, we say you breached. Here are our damages for your breach. Even if that claim was a necessary alternative as to the delay, it certainly was not as significant as the defense of the landlord's case-in-chief in the recovery of the security deposit. One was $120, one was $160, you know, close, right? I don't think that the delay damages were equivalent to the value of the rent. They were simply a question of whether or not the tenant had lost money awaiting the foot-dragging of the landlord. That was not that significant. The lost profits analysis that came into the case on the alternative claims was for- The landlord and tenants have lost $45,000 for the 2011 tax season, $75,000 for the 2012 tax season. That's real money, right? If I'm mistaken, the 2012 tax season had not yet occurred. It's your complaint. Certainly. I'm just reading from your complaint. I don't get this theory of damages, to tell you the truth, but in any event, that's what you asked for. That's what we asked for. In the event that the lease had not been terminated, then the space had not been tendered as warranted in the lease. Therefore, there would be damages for not having the business premise to conduct during tax season. That was the essence of that argument. But if, for some reason, the Court found that there was no termination of the lease, that, in fact, the tenant would have been prevented from making its anticipated profits over those tax years and time periods. There was not an allegation of the delay in the dispute over the HVAC issue causing that amount of money in damage. It's clear from the record that there was an accommodation, an alternative space that was offered to the tenant. And it says it was not tendered timely under the original possession date. This alternative space was Unit 12, right? Yes. It was not tendered timely. I mean, honestly, I don't understand what your theory was. But it does seem to be your theory that they breached, that the lender caused you damages, and when you list out your damages, you say $45,000, $75,000, and $3,000. You list them all together. Those were your damages, and $3,000 being the security deposit. It doesn't seem to me to be an alternative. That seems to be your damage theory that you lost, except for the $3,000. Right? Am I missing something? Respectfully, yes. Okay. The way I would set it out. So the facts in the case that are undisputed were that there was this accommodation space given. So contemporaneously with the agreement of the parties to have this business relationship, Suite 11, whichever side was going to be taken, was not yet ready. The tenant was given 12. A much larger space, but an extant space that the tenant used in order to conduct its business. So while there was some delay in time of getting 12, it was not that year and a half. It was not that double-tax season time. The tenant was up and running and operating a business. The theory of recovery that if, in fact, the lease was still operative, for some reason the termination provision was not correct, the termination was not accepted, and the court found the lease to continue, the tenant still had not been given, at the time of this litigation, possession of that actual space. 12 was given contemporaneously. The damages do not relate to an immediate lack of being able to conduct business right there in Oak Forest. The tenant was in 12. The issue was the tenant still had not gotten 11 over time, and if for some reason that lease was still active, the tenant was precluded from accessing it, was not given it, et cetera. The underlying claim, which, if we look at the major issues in the case, it is fundamentally a dispute of the lease agreement. Whether or not the tenant terminated the lease because the landlord failed to deliver possession of the completed space, that was the core issue in the litigation. It was proving that the landlord had no right to recover all of the additional rents under the lease, proving that the landlord's case was not one that would entitle him to relief and recovering the security deposit. That was the significant piece of litigation here. On the other hand, the landlord sued you for a significant amount of money that he would contend or it would contend was a significant part of that litigation. So he lost his claim, you lost your claim, both significant in each of your minds, and all that was left was a $30-some-hundred security deposit, which was probably the most insignificant item litigated in the trial. Respectfully, defeating the landlord's claim was exceedingly significant. And the landlord would say defeating your claim was significant also, so that you lost, right? But the landlord didn't spend that bulk of time proving that beyond the date of termination that RER Financial had been precluded from entering its premises. This is where the discretion to the trial court comes in. The trial court, who actually sat through day after day after day of this hearing, said, eh, curse on both your houses, you both lost. And you're saying, well, that was really small, that was really big, but we don't know, I mean, the trial court is the one who sat through all this testimony and said, in the scheme of all this, so why, you know, where is, well, I guess, first of all, do you continue to contend that our standard is de novo rather than abuse of discretion? And if not, where is the abuse of discretion in the trial court's determination? Certainly. I would advance both arguments. That if it is a question of law as to whether or not this lease had a magnitude provision, weighing the value of the win, the court read that in impermissibly. The clear language of the lease says the prevailing party gets their attorney's fees and costs. It doesn't say the big winner over the small winner. Well, everybody agrees to that. Yeah. So, and that would be the de novo part. Correct. So your only, your argument is that he misapplied it based on the facts. That is one of our two arguments. The other is, even if there is a correct application of that provision, it's an abuse of discretion not to award any attorney's fees and costs. There is clear evidence, notably to take one quick step back, when there is an adjudication of a prevailing party, and I believe that REI financial meets all of the characteristics set forth in the cases cited for a prevailing party, then the court turns to a question of adjudication of the attorney's fees and costs. There was no fee petition encouraged. There was no opportunity to present that, and there was no weighing of what fees and costs in that whole petition were expended towards the recovery obtained here. Evidently, the record shows that there were costs because there was a counterclaim filed. Evidently, an over two-year trial would have attorney's fees involved. The court never weighed how much was spent to recover that amount of money. But it's also an abuse of discretion. It is subject to an abuse of discretion review who is the prevailing party, whether there is a prevailing party. That's an application of the facts to the law, to the contract language. We all agree that prevailing party gets fees under this contract provision. Who is the prevailing party is an application of that. And the trial court made a determination that there was no prevailing party. That, I think we review on an abuse of discretion standard, that determination. Very well. And if that determination was made, it's contrary to similar determinations in other case law. Okay. There are cases such as Naperville South. Fortunately, it does contain familiar parties. It was the same principle of the landlord in that case as ours here. In that case, the court held that the defeat of the landlord's claim for unpaid rent is significant recovery. There were no other additional claims. But, see, here you did make additional claims, that they defeated, and therein lies your problem. I did. And I want to bring in Justice Pierce's question and your comment to that problem in looking at how the trial court reviewed those alternative claims. In the colloquy, importantly, Judge Clifford notes, as to those other claims, maybe I won't use the word alternative in honor of Justice Mikva's characterization. We'll have a discussion here. But the court refers to those and says, and so, in paraphrasing, the landlord's lost its case. Termination was proper. The others go by the wayside. Therein lies how the court viewed those other claims. If, in fact, the lease was validly terminated, those other claims are of no meaning, aside from the security deposit, of course, which would be due to the tenant, because there was no allegation at trial of any deductions from the security deposit. As the court saw the claims, and as the court ruled in its colloquy, those other things went by the wayside because of the determination that the lease, in fact, was over with. That, I think, is a very good view as to how the court weighed that dispute. Looking at that, then you see that under these other cases, Naperville South included, RL Financial was the prevailing party. They prevailed. They defeated the landlord's claim for rent. And they logically recovered the security deposit that would be due to the tenant. The cases out there that weigh these variety of the wins, and I know that Ms. Kimball, when she presents her argument, will say this was a complete mutual destruction of equal claims. There certainly was no overwhelming recovery to the landlord. If you look at the cases that talk about these mutual defeats or these small victories, these are cases where the recovery is minimal, and it's outside of the bounds of the lease agreement itself. It does not pertain to the underlying litigation of that lease agreement. A good example is the installation of the telephone and the subsequent remediation of those damages. I believe that was Powers. Okay, but in Powers, they say that the basis is that they should review the value of the claims, their complexity, and the time devoted to other issues at trial. There was no time devoted to the security deposit at trial, or was there? Was there some witness that talked about the security deposit at trial? Archman and Rogers. What did they say about it? That there was a security deposit and it wasn't returned under a lease agreement. That was in the complaint. It was admitted in the counterclaim. I mean, they admitted that there was $3,000 and that it wasn't returned. And that's exactly the point in the sense that a security deposit is returned if a lease is terminated. Well, there's no damages, but we'd be talking about damages to Unit 12, I guess. And the lease was for Unit 11. Correct. There was no litigation on issues of damage to 12. There was no holdback requested by the landlord. He simply sat on the security deposit. The value of this claim is the sum total of defeating the landlord's claim plus the additional money for the security deposit. But you did seek $120,000. I have the counterclaim here, $45,000, $75,000, and then $3,000. Because at the time of filing of the counterclaim, if, in fact, the lease was still valid, RER Financial had not been given access to its business premises, and those would be the lost profits of that time. Well, that was your claim. That was a claim. Termination was never taken. Supposing termination never occurred, that's the problem. The litigation of this case was proving the landlord wrong. That was the core issue here. And proving you right. That we terminated, correct. And that you were in charge of the damages. Return of the security deposit in chief because the others fell by the wayside. In $120,000. Right? We spent exceedingly little time on that. You asked for $120,000. In the alternative. It doesn't say that in your counterclaim. You understand that? You make an alternative, count two, for the renting to a competitor. That's your alternative claim. That's count two. Count one of your counterclaim doesn't say in the alternative. It lists all those three damages together. That's our problem. That's what we're looking at. It doesn't say alternative. There's nothing in the record you're pointing to that says this was an alternative claim that we never got to. So, you know, that's where we have to defer to some extent to the trial court who heard all this and said they both lost. And you do understand it's different if you both bring claims and you both lose than if all you are is a defendant. And you could be the prevailing party even though you don't get a dime other than your security deposit if you defeat their claims. But because there was a mutual destruction here, those cases are different. You do understand that. I know you do. Well, I'm not going to necessarily admit it. My own understanding would be different. However, I think the trial court's colloquy is important because Judge Clifford does say in there and he does acknowledge in there that those other things are moot because termination was valid. Right. So since it was the voluntary decision of the defendant to terminate this, he cannot make there is no valid claim for his damages he voluntarily terminated. That's what you're relying on. Right. He does say that. But I don't know. But you still litigated the claim. It was still part of the litigation. Well, and that's what we're talking about, the cost of litigation. The attorney's fees are the cost of litigation. And if you chose to litigate it, now, if you didn't, as Justice Miklas said, I don't know. That would be a different story if you didn't bring the $120,000 claim. The core expense of the litigation here, and the record shows clearly in the transcripts, the wide majority focus of this trial was looking at whether or not the lease was, in fact, terminated validly. Was the HVAC installed on time? What was done with the build-out? That was the value of all of the witness testimony, going through the formation of the lease, whether it was ambiguous, looking at the contract itself. And in that sense, that is the core bulk of this litigation, is proving the landlord wrong and getting the security deposit back. The trial court board correctly said those alternatives, those difference, those things go by the wayside because, in fact, the landlord was not entitled to rent, the lease was terminated, and the security deposit is due to be returned. In that sense, we believe that this presents, in line with the case law, sufficient reason to say, in fact, RER was the prevailing party under that lease. Indeed, one could say those lost profits damages don't even fall under the lease, so there might not necessarily be a claim for attorney's fees as to those. The clear contract between the party that says the prevailing party under this lease is entitled to its fees and costs, RER prevailed, RER proved the landlord wrong, the rent was not due, and it's clear from the record, as the judge acknowledged, that the landlord simply didn't want to accept the termination notice. That's why we had to litigate. The parties at the outset of their relationship agreed that if we come to a dust-up, the winner takes their fees. There was a dust-up. That happened. The alternative here that results is landlords can simply ignore termination notices from tenants and litigate matters to great expense, which would leave RER unable to recover its security deposit and instead having to face a major claim that ultimately would be defeated. So for this and these items here contained, we think that there are some amount of fees and costs that would be due. And even so, even if we're not looking at a de novo question, the trial court below should have reviewed to determine exactly what amount of the fees and costs were expended towards the security deposit. That was never done, despite clear information in the record before the court. He says there was no testimony to damages. So the security deposit goes because there was no testimony. The security deposit's returned as a matter of law if the lease is terminated. It's a ten-second argument, no matter which way you count it, because you have to prove that the lease was terminated validly to get it back. One could say equally that the entire litigation would have been about the security deposit because it's proving the valid termination. But he says, I have absolutely no evidence whatsoever about any damage to Unit 12 that would mark keeping the security deposit. Because even if you terminate it, if you damage the unit, you might be litigating that. I don't know. Certainly, and it's not on our behalf to bring any questions about damage to Unit 12 when none was alleged in response to our request for a security deposit or in our answer to the complaint about the lease. So damage that would otherwise forestall the return of a security deposit was never an issue. It was about proving the lease being validly terminated to recover funds that were, therefore, withheld. So even if there's deference provided, the court still had to see what here was spent towards that. Obviously, there were costs. He would have needed to look at that. Obviously, there would have been something in fees that would have needed to be looked at, too. I think both sides can say either this is very small or, in fact, to get our security deposit back, we had to prove the lease termination was valid. And it's rare in a security deposit case that you have to bring experts, that you have to spend multiple days of trial time over the course of years to simply get back a security deposit for which no withholding has ever been itemized. This was not an easy case to get back that amount of money. So you put on experts as to your damages. No, the experts were as to the condition of the premises. There were no financial experts as to damages. How did you prove up your damages? Whether it's simply the existence of a payment for a security deposit. That was all we would need to recover the security deposit. No, no, the $75,000, the $45,000. That was just testimony from the principal as to what his average earnings would have been in the amount of time specifically in those years when he wasn't there. But if he would have been there, because for some reason he should have been, but the landlord never gave the premises. It was just based on past earnings for the business. So in that sense, those certainly do fall by the wayside because he validly terminated. We maintain that position all along, that these are only necessary if we've been delayed in getting access and for some reason termination wasn't valid.  His accounting practice as an alternative accommodation space. Those big damages come if for some reason the court finds that the lease is still ongoing. RER simply hadn't gotten the space that it had bargained for. Your time has expired. Do you have anything else you want to quickly argue? For these reasons, we ask that it be sent back for further ruling. Thank you. Very well, thank you. Ms. Kim. Kimball. Good afternoon, Justices. I think picking up on where counsel left off, or at least with the bulk of his argument, I think that the argument really is resolved on the language of the counterclaim, which Justice McQuinn mentioned a little bit a few moments ago. If you look at Paragraph 14 of the counterclaim, they allege right in the counterclaim that the lease was terminated, tenant's obligations were relieved, landlord's obligations were relieved, and then they go on to state these claims. So for whatever reason, they believed that despite what they contended was a valid termination, they still had damages claims over $120,000. I'm not sure why, but that was their position. Those claims continued on throughout the trial. There was evidence around those claims. In terms of damages, counsel is correct that they attempted to prevent those damages through the testimony of the principal. We challenged the damages through the testimony of the principal. It was not a full-blown conclusion that either the termination was valid or that these claims were invalid. In terms of the amount of time that we spent on the security deposit, it was literally, did you pay a security deposit? Yes. Did you get it back? No. Okay, let's spend another three hours talking about all the other stuff. And I don't think that it was really, as Justice Griffin said, I don't think that we ever seriously disputed the return of the security deposit if, depending on how the other facts showed out, what we disputed was owing $120,000 for they terminated the lease and yet still claimed that they were damages for work that they claimed to have performed. And not only was the security deposit claim not an alternative claim, it's not even the claim that they mention it in their complaint. It is not a count of their complaint. It is not a basis of breach alleged in their complaint. They allege in Paragraph 21, Landlord failed to perform its obligations under the lease by failing to complete its portion of the work as agreed. They allege in Paragraph 22, Although when we got the accommodation space, this accommodation space was not tendered timely under the original possession date of the lease. Twenty-three. As a result of this delay in access to a business premises and in landlord's subsequent failure to tender the premises as agreed, counter plaintiffs have suffered damages. Twenty-four. Landlord's breach of lease caused counter plaintiffs to suffer less revenue and interruption to business operations. And then they go on to state those dollar amounts. And then we get Paragraph 25. And also we haven't been refunded for the security deposit. I think it's implied that they contended that it was a breach of the lease, but it's not even the basis of their count one, and it's not mentioned in count two, and it's not also a separate count. We spent 18 months getting this case tried. We put in multiple witnesses as to a number of points. I think at one point, Judge Griffin, in his recitation of the facts, says it was a rather hellacious scenario. Judge Clifford, I'm sorry. No comment. But Judge Clifford acknowledged that this was a big, fat, specific mess that he had to sit through and figure out what happened, was the termination proper. If it was a matter of law and with a lease, it could have been decided that easily. It wouldn't have taken us 18 months to try it. But that's what happened. And there was evidence put in as to the termination. There was evidence put in as to landlord's claims. There was evidence put in as to the tenant's claims. You know, in looking at the case that I just cited, the question here isn't whether the tenant could have gotten fees if they hadn't stated counter claims. The question isn't whether they could have got a prevailing party if the judge had viewed the facts differently. Maybe they could have. The question is whether it was an abuse of the discretion to find that there was no prevailing party in this case. And in 18 months of trial, where you've got a landlord stating claims at over $160,000, you've got a tenant stating claims over $120,000, that's what we're fighting about. We're not fighting about a $3,400 security deposit, really, at any point in time. On those facts, and looking at the authorities and emperors and the others that have been mentioned, to a large extent, it really was a draw. Obviously, there had to be findings made. It could have been that the termination was invalid, and yet no party was a prevailing party. I mean, there's a lot of different ways the case could have played out, frankly. But at the end of the day, the judge found that neither party recovered on their claims, the great majority of them. When I made the calculations in putting the brief together, the security deposit was, I believe, around 3% of one party's claims, around 2% of the other party's claims. So in terms of the dollar amount, it was close to nominal. In terms of time spent, I would say the same. The security deposit is not what this case is about, period. And if you look at, I believe it's Powers that talks about the $875 phone installation and saying it was an abuse of discretion in that case to award fees based on an $875 award, when what the parties were fighting about was this environmental contamination issue. And as to the environmental contamination issue, there was declaratory judgments going back and forth, and it seemed that the, my understanding is the court basically said one side needs to do this, but it appears that they're doing it, therefore there's really not a whole lot to do here, and it's a draw. And in that case, the court decided because there was this $875 award, they would get some amount of attorney's fees. And that case was reversed for abuse of discretion, which is really the opposite of what we're here on today. Because here we're saying, no jurisdictions as sojourned, we're all walking away hurting, and yet we've got this couple thousand dollars, so if it was an abuse of discretion to award the party in Powers $875, I'm not sure how it could be reversible not to award one side attorney's fees based on a $3,500 award here. And that's really the situation that we're facing. I mean, if they had been awarded attorney's fees on the outside, I think Powers would have justified a reversal of that. Because Powers says, what is the significant issues, and what is the significance of the issue that you went on compared to everything else? Counsel in the required group says, well, that person didn't really win on anything. And that was confusing to me, and I struggled with that. And I think the issue is that because we don't have a dollar amount judgment in our favor, the person counsel wants to skew this as we didn't win. But I think defeating a two-count power claim counts as a win, with the exception of the $3,500 security deposit, which, as Justice Griffin pointed out, we weren't really contesting that part. We were contesting the chunk of damages. So the practical lesson would be, in this type of litigation, give the security deposit back and battle it out over the big money, right? If my client had asked me? Well, no, I mean, but that seems to be the proper resolution from a practice matter, is if you've got these nickel and dime little bothersome issues, concede it, get it over with, and battle it out over the big stuff. Because if you win, you have no risk whatsoever of having some judge exercise his discretion and find that there was a prevailing partner. And I think that's a risk that parties like a strip mall landlord should understand exists, absolutely, and a risk that a proven attorney would advise them of, absolutely. It's a practical matter where clients always listen, where they return the $3,500. That's not the point. Right. Okay. Sorry to interrupt. Not at all. Counsel relies on Merrillville South Commons and the other one. Myers v. Pop is the other case that they rely on. And neither one of these cases, I think, really informs the argument very much. First of all, in both cases, the discussion was about amounts of fees and what could be awarded in terms of amount. I think Myers talks about what type of evidence is required in order to have a hearing on attorneys' fees. None of that was at issue here. Counsel's right. There was never a hearing, and there was never a hearing on fees because Judge Clifford decided at the outset that there wasn't a prevailing party. And I think his opinion helps us to see that he was applying this analysis properly. I mean, for him to say, yeah, nobody wins because of this termination. Because the counterclaims don't rest on the termination. As much as he can say, well, our counterclaims really were contingent upon finding that there was no termination. Well, that issue hadn't been decided at the time of trial, and they stated the counterclaims after also saying that the termination was valid. So for them to skew it as a win across the board doesn't really jive with the pleadings or with the evidence that was put on at trial. Nevertheless, at Commons, on the other hand, you've got one party stating the claim and really all we have to decide is whether one party won an issue, whether attorneys' fees are properly awarded to a prevailing party. The other claim, I believe, in that case was voluntary surrender of possession. So the judge in the murder of Custaff Commons says, well, the tenant gave the possession back and then defeated the claim for the damages claim out of the lease. That was the only issue that was before the court of trial, which is not our case here. I think that, as Justice McCliff pointed out, the realm that we're in right now is resident abuse of discretion. For Judge Clifford to decide that there was no prevailing party in this case, when you have the only win in terms of affirmative relief was the $3,400. And for Oak Forest to successfully defeat the $120,000 claim, I told my client it was a win, at least in terms of if we're going to face some $3,400 in damages, we can live with that. And I think that that's how he appreciated it, how my client appreciated it. Certainly that's what jives with the pleadings that were faced within the counterclaim as well. So I could talk more about my arguments, but I don't want to – I don't know that it's necessary. If anybody has any questions, I'm happy to keep going. Justice Clifford? No, I'm good. Thank you. Okay. If you have anything else you want to touch on, that's fine. I don't think so. I think the Court is satisfied with your argument. Thank you. Mr. Stevens, briefly? Yes. One thing really sticks in my mind from Ms. Kimball's presentation, which is the question of whether or not adjudication of the termination is dispositive of the counterclaims. It wholly is. Wait a minute. I'm looking at the counterclaim. It has nothing to do with termination. It's a breach of agreement, breach of the lease agreement that says they did not tender possession of the premises on time. As a result, you were damaged. Correct. The termination doesn't come into play. You were damaged because they did not deliver possession of the premises in a timely manner, and the judge didn't feel that was correct. But the trial court did say that the termination being valid moots the portions of the counterclaim not related to the street. The counterclaim says what it says, though. It doesn't talk about termination. Correct. We're not challenging Judge Clifford's ruling that the termination being valid moots those other portions of the counterclaim. Maybe he was incorrect, and maybe you should have challenged that. Maybe that would have made your argument here a little bit more valid. Here you are. Right. This is what we're stuck with, or more importantly, you're stuck with. Well, it's the nature of the case before us, but I think if you look at it. We can't now transform it into something else. No, but I go back to your question to Ms. Kimball of would it not have been a good idea to tell the landlord to give back the security deposit. My client's first lawyer asked for that long before the litigation commenced. That's in the record. That was facts and evidence at trial that we tried to get the security deposit back, and instead the landlord sues not only for breach of the lease but for unjust enrichment, also for Unit 12, so there are other claims and not just the lease there, and the landlord loses on those claims. Just like in Naperville South. The landlord goes through. Possession is given back. The landlord still sues and loses. That is significant recovery. That is what we're dealing with here. So I want to. Why do you ignore the counterclaim? I think if you treat the counterclaim just as Judge Clifford did, which is it becomes moot if termination is valid. See, I would say Justice Pierce suggested the takeaway is give back the security deposit. I say maybe the takeaway is don't always file a counterclaim, but this is all not really. This is just thoughts from the bench. Certainly, and thoughts from the bench are what end up in opinions and is what makes lawyers do what we do. But I think to respond to Justice Griffin's review of that when he's citing the space, the space is referenced in the counterclaim there as 11B. It is not the accommodation space. So I would say to the extent that we were given the accommodation space, there's no delay there. But I think that all of this does hinge on whether or not it's a case about the minuscule recovery of a security deposit or what you have to do to get it. And what you have to do to get it is defeat a landlord's claim that went on and on and on. The landlord, in his letters, it's established in evidence he was willing to sue. Off he did. And that's not what the parties bargained for. But to Justice Mikva's point, you brought in a $120,000 claim that they breached this, not being timely, rented to a different tax office. And that was all after termination. So if the lease was still active, those items occurred after termination. Judge Clifford noted that those were moot if termination was valid. So those are my thoughts, that it is a case that's one about defending against a major claim by a landlord. And, of course, if that lease is terminated, the security deposit comes back. The other items, correctly, as Judge Clifford noted, go by the wayside if that termination is proper. My client prevailed. It wants the benefit of the bargain it had with the other party to the contract, which are its fees. And there's nothing in the contract, and there's no dispute in terms of the interpretation of the contract by the parties of trial, that would say my client is not otherwise entitled to its attorney's fees and costs as a significant party, a significant recovering party, as the case law supports. For those reasons, we ask the case be sent back. Thank you, Justice. Thank you both for your briefs and arguments. The Court will take this matter under advisement. We'll stand in recess for a few minutes.